UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO.: 04CR10309GAO |
| | ) | VIOLATION: 18 U.S.C. § 922(G)(1) |
| V. | ) | Felon in Poss. F/A, Ammo |
| | ) | |
| KURBY DUMORNAY | ) | |

DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR
PRODUCTION OF DISCOVERY MATERIALS AND
INFORMATION RELATED TO CONFIDENTIAL INFORMANT

The Defendant, Kurby Dumornay, was indicted for the above referenced charges as a result of a search warrant, authorized solely based on representations made by a confidential informant (CI) and attestations to that CI's reliability by a government agent. The Defendant has argued that much of what the government has refused to provide is not privileged. The defendant's motion specifically requested information that was redacted and sanitized to protect the identity of the CI. If such materials can be presented in that form, the government cannot assert a privilege. Nor can they refuse to disclose the contents of communications which do not tend to reveal the identity of the informant.

The defendant has requested discovery materials including information pertaining to the confidential informant (CI) to determine the following: 1). whether the government's assertions in the affidavit i.e. that the CI was reliable and had the requisite basis of knowledge were accurate, 2). whether the government recklessly or intentionally

omitted material information from the search warrant affidavit and 3). whether the CI was involved in the sale of the gun to the defendant availing the defendant of an entrapment defense.

### 1). CI's reliability and basis of knowledge

Although the government states that the confidential informant is reliable, the defendant is not required to accept this assertion, particularly under circumstances that fail to demonstrate a basis of knowledge on the part of the CI. With the omitted information of make, model and serial number, the CI's reliability is further called into question. Although the Court could be led to believe that the CI was both reliable and had a sufficient basis of knowledge based on the representations contained in the search warrant affidavit, namely that "he/she has seen DUMORNAY carrying a firearm on two occasions with the past 40 days" and "on two separate occasions he/she saw DUMORNAY display the firearm to a number of individuals in the Brockton area while outside of his residence" (see Search warrant affidavit, page 3, paragraph 4). These statements would have been challenged had the Court been fully apprised of all of the CI's alleged information. The omission of this information was misleading in that its omission created no issue as to the CI's reliability.

According to the agent's report and prior to the filing of the search warrant affidavit, on these two occasions, the CI was able to discern the make, model and serial number of the firearm while in the Defendant's possession. The Defendant has suggested that the omission of such detailed information was material in that its inclusion would

raise additional questions challenging both the CI's reliability and basis of knowledge. The make and model of any firearms are not easily identified by a lay person. To identify a particular make and model requires specialized knowledge, none of which has been suggested by the affiant as this information was included. Had such information been provided, the affiant would have been required to explain how the CI was able to identify the make and model. Lorcin does not just make just one type of firearm. Lorcin makes 6, including a .22 caliber, a .25 caliber, a .32 caliber, two kinds of .380 caliber and a 9 MM. There is no information in the police report as to how the make and model were determined. The serial number on the Lorcin would be impossible to ascertain by casual observation, let alone remembered and recounted 40 days later. The only way that this serial number could have been ascertained is if the CI actually handled the firearm or was with a matter of inches from it and given full opportunity to observe it unobstructed. The information identifying its maker, the model and serial number is obstructed when handled. There is no explanation of this mystery. Although the affidavit avoided the subject, the police report is equally silent as to how this was accomplished.

The only thing on which all agree is that without the Court accepting the affiant's representations that the CI was reliable, the search warrant would never have issued. Thus without first including this information in the affidavit and offering some basis as to how this information was gathered, a finding of reliability would have been questioned and contradicted. The CI would not have been deemed reliable on such information.

2). <u>Government's omission</u>

In <u>Franks v. Delaware</u>, 438 U.S. 154 (1977), the Supreme Court held that a search warrant must be voided and the fruits of the search suppressed if perjury or reckless disregard for the truth is established and "the affidavit's remaining content is insufficient to establish probable cause." In the <u>United States v. Higgins</u>, 995 F.2d 1, 4 (1st Cir. 1993), the Court held that "[w]hen a defendant offers proof of an omission, the `issue is whether, even had the omitted statements been included in the affidavit, there was still probable cause to issue the warrant.'" The Defendant may obtain a Franks suppression hearing if he makes a substantial showing that a false statement (or omission of a material fact) was made either intentionally or with reckless disregard for the truth in a search warrant affidavit.

The Defendant cannot properly advance a Franks motion until he has the benefit of all the discovery to which he is entitled. The Defendant needs such additional discovery to determine whether a substantial showing of falsehood or reckless disregard can be alleged. The Defendant has already argued that such an omission was material as it misled the Court as to the CI's reliability.

In <u>Higgins</u>, the Court left discretion to the distict court to permit a less intrusive "in camera examination of the affiant and, if necessary the informant, in order to determine whether disclosure of the confidential informant's identity would enable the defendant to obtain a <u>Franks</u> hearing." The Court could order such a hearing to make an assessment of the veracity of the informant's information and the intentions of the government in omitting such information.

3). <u>Entrapment defense</u>

"The Courts have long recognized that the Government has a 'privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law.' <u>Rovario v. United States</u>, 353 Mass. 53, 59 (1957). This privilege, however, is not absolute. Id. at 60-61. "Where the disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Id.

The resolution of this issue depends on the particular circumstances of each case. Id. at 62. The trial court must balance the public interest in protecting the flow of information against the individual's right to prepare his defense. Id. In so doing, it should take into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors. Id. The burden is on the defendant to demonstrate that the circumstances demand disclosure.

The Defendant suggests that he has made such a showing under the <u>Rovario</u> standard. The Defendant as part of his proffer for information relating to the CI's identity has represented that there was only one person who was in the position to ascertain the make, model and serial number of the firearm recovered by the government agents. That person was the same person who talked to the defendant about buying a gun and made the arrangements for the gun to be sold to the defendant. This person drove with the defendant to where the transaction occurred, discussed price, ammunition and handled

the gun after the transaction. Not only was this person the instigator of the sale of the firearm to the defendant, he was a percipient witness to this event.

The Defendant has offered an explanation as to how the government's CI was able to know such specific information pertaining to the firearm. The government's version, which derives wholly from inference, i.e. that the CI was in a position to see the serial number, that he/she has special knowledge to identify by sight the make and model of firearms, that he/she was able to distinguish a 9MM from a .380 and that he/she was able to remember and recount the serial number 40 days later, is not credible. This coupled with the omission of this information from the affidavit, lends further credence to the defendant's position and his need for such information.

For these reasons, counsel for the Defendant respectfully requests this Court order the production of these materials.

FOR THE DEFENDANT,

/s/ William M. McCauley
WILLIAM M. McCAULEY
Beckerman, Bomberg & McCauley
35 Samoset Street
Plymouth, MA 02360
Tel.: (508) 746-8900
Fax: (508) 746-4455

## CERTIFICATE OF SERVICE

I, William M. McCauley, as counsel for the defendant in the foregoing matter, hereby certify that I have this date served a copy of the Defendant's Memorandum in support of Discovery Requests by mailing, first class mail, postage prepaid, a copy directed to

        William Connolly
        Assistant United States Attorney
        U.S. Courthouse, Suite 9200
        1 Courthouse Way, Boston  02210

Signed under the penalties of perjury this 14th day of July 2005.

        _____
        William M. McCauley
        Beckerman, Bomberg & McCauley
        35 Samoset Street
        Plymouth, MA  02360
        (508) 746-8900