UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO.: 04CR10309GAO |
| | ) | VIOLATION:   18 U.S.C. § 922(G)(1) |
| V. | ) | Felon in Poss. F/A, Ammo |
| | ) | |
| KURBY DUMORNAY | ) | |

DEFENDANT'S MOTION TO COMPEL FURTHER DISCOVERY

Now comes the Defendant and requests this Honorable Court to order the government to provide additional discovery. The Defendant asserts that such information is not privileged and necessary for the Defendant to properly prepare and present a defense.

In response to a prior discovery request, the government has provided the Defendant a document entitled "Department of the Treasury Bureau of Alcohol, Tobacco and Firearms Informant Agreement" (hereinafter "agreement" and attached as exhibit #1). This agreement is the form used by the government when entering into an agreement with an informant or cooperating witness. The Defendant seeks the actual agreement between the government and the informant with the confidential informant's identity redacted.

The document provided by the government in its blank form does not provide the following information the Defendant seeks:

1). paragraph #1 – "describe activity that the informant or cooperating witness or subject will be doing for the ATF".
2). paragraph #2 – "the assigned Special agent" and the Special agent with whom he/she was to "maintain contact".

3). Paragraph #3 – whether ATF authorized the informant to "participate in any unlawful activities" which were "expressly authorized . . . in advance".

As grounds in support of this request, the Defendant states the following as background. The Defendant was indicted for the above referenced charges as a result of a search warrant. This search warrant was authorized solely based on representations made by a confidential informant (CI) and attestations to that CI's reliability by an ATF agent. In the affidavit submitted with the application for a search warrant, the agent relying on information provided by the CI stated that the Defendant is a drug dealer and that "he/she has seen DUMORNAY carrying a firearm on two occasions with the past 40 days" and "on two separate occasions he/she saw DUMORNAY display the firearm to a number of individuals in the Brockton area while outside of his residence" (see Search warrant affidavit, page 3, paragraph 4). The CI told the agent that on both occasions after displaying the firearm, the Defendant then went into 7 Colleen Drive in Brockton. The agent further indicated that the CI had been reliable in the past. As a result of the agent's representations and attestation to the CI's reliability, the magistrate issued the search warrant. The warrant was executed at 7 Colleen Drive resulting in the seizure of a firearm and ammo.

At that time, the affidavit appeared to satisfy the requirements for the issuance of a search warrant. The government later provided the Defendant with the agent's reports which indicated that prior to the application for the search warrant, the CI had actually provided the agent, the make, model and serial number of the firearm. Despite being provided with such specific and detailed information regarding the firearm, the government did not include this information in its affidavit. There was no additional information as to how the CI was able to provide such specific information. Further, the government did not include this same

information (make-Lorcin; model – 9MM; serial number – L094494) in its application for items to seized. Instead the government requested a general search for any firearms, despite its own evidence that the Defendant possessed a single firearm which was specifically identified.

The information provided by the CI to the agent raises more questions than it answers. No information was provided as to when this conduct was observed (except sometime within 40 days of reporting it to the agent), how the CI was able to observe a serial number of a firearm in the possession of another person, how the CI was able to remember the serial number, how the CI was able to determine the firearm was a Lorcin, how the CI was able to determine the firearm was a 9MM rather than a .380 versus one of several other firearms Lorcin manufactures, how long the firearm was displayed during these two occasions or the manner in which the firearm was displayed that would allow surreptitious observation to gather such specific and detailed information.

The Defendant contends that such omission was material as it prevented the magistrate from raising these same questions as to how such information was ascertainable while the firearm was in the possession of the Defendant. The characterization of the CI as reliable in the past does not relieve the government of demonstrating the reliability of the CI in this case. By omitting such information, this issue was avoided as the only evidence suggested was that the CI had been reliable in the past.

The Defendant's assertions are supported by common sense and an inspection of the firearm (photo attached as exhibit #2). There are many makes of firearms. A person would have to have special knowledge and training to discern the make of a firearm by mere observation particularly when such observation is surreptitious. Additionally, such special knowledge and training would be necessary to first determine the make as well as

determining the caliber or particular model. Lorcin does not just make just one type of firearm. Lorcin manufactures six, including a .22 caliber, a .25 caliber, a .32 caliber, two kinds of .380 caliber and a 9 MM. There is no information as to how the make and model were determined.

The serial number on the Lorcin would be impossible to ascertain by casual observation. The color of the firearm is black which makes inspection of the serial number extremely difficult without close examination. The only way that this serial number could have been ascertained is if the CI actually handled the firearm or was with a matter of inches from it and given full opportunity to observe it unobstructed. The information identifying its maker, the model and serial number is obstructed when handled. The serial number is on the right side of the firearm just above the trigger. The index finger and hand of a righthanded person holding the firearm would further prevent such ability to observe this area. Finally, unless a person holding the firearm kept his hand still, no one would have such an opportunity to make such observation. There is no explanation of this mystery. Although the affidavit avoided the subject, the police report is equally silent as to how this was accomplished.

The Defendant disputes the CI's contention that this information was learned from surreptitious observations of the Defendant. The Defendant further contends that no one would be able to learn this information while the firearm was in the possession of another person under these circumstances. To gather such information, a person would have to either physically handle the firearm or be allowed to closely inspect it. The defendant by way of affidavit states there was only one person who he observed handle it and was in such a position to ascertain this information. That person was the person who induced him to buy the firearm (see attached Defendant's affidavit).

There is no information disclosed as to how such information was obtained. Relying on the government's prior response for this information, there appears to be no specific information other than "the informant observed the serial number on the firearm and then called Agent Campbell with the information. Agent Campbell believes, but he cannot be certain, that he actually spoke to the informant when he called, but it is possible that the informant left the information on his message machine." There is no information regarding where the firearm was when he saw it (in defendant's hand, belt, etc.), what the lighting was like, what side(s) of the firearm were observed, where was the serial number located, how he was able to ascertain it was a Lorcin or a 9MM, whether the Defendant was standing still when he observed it or how close to observe it. If the CI did see the serial number, one might naturally expect the description to include the obvious scratch marks on the serial number.

The Defendant contends that the discovery information sought is not privileged and is necessary to further challenge the reliability of the informant. The Defendant does not seek the identity of the CI at this time and such additional information will not lead to the discovery of the CI's identity. Rather such information is sought for the purpose of challenging the CI's reliability and whether the agent knew or should have known that the information provided by the CI was not reliable. The Defendant suggests that a person who was in a position to gather this information would have to handle the firearm. The agreement with the government would necessarily require prior approval for the CI to do so. If the CI was acting outside the scope of the government, the government had a further basis to question the CI's reliability and to bring that information to the magistrate's attention. The search warrant would not have issued had the CI been deemed unreliable. The omission of such information foreclosed such a finding.

In Franks v. Delaware, 438 U.S. 154 (1977), the Supreme Court held that a search warrant must be voided and the fruits of the search suppressed if perjury or reckless disregard for the truth is established and "the affidavit's remaining content is insufficient to establish probable cause." In the case of United States v. Higgins, 995 F.2d 1, 4 (1st Cir. 1993), the Court held that "[w]hen a defendant offers proof of an omission, the `issue is whether, even had the omitted statements been included in the affidavit, there was still probable cause to issue the warrant.'" The Defendant may obtain a Franks suppression hearing if he makes a substantial showing that a false statement (or omission of a material fact) was made either intentionally or with reckless disregard for the truth in a search warrant affidavit.

In Higgins, the Court left discretion to the distict court to permit a less intrusive "in camera examination of the affiant and, if necessary the informant, in order to determine whether disclosure of the confidential informant's identity would enable the defendant to obtain a Franks hearing." The Court could order such a hearing to make an assessment of the veracity of the informant's information and the intentions of the government in omitting such information.

The Defendant cannot properly advance a Franks or Higgins motion until he has the benefit of all the discovery to which he is entitled. The Defendant needs such additional discovery to determine whether a substantial showing of falsehood or reckless disregard can be alleged. The Defendant has already argued that such an omission was material as it misled the Court as to the CI's reliability. The only remaining issue is whether it was intentional, with reckless disregard of the truth or merely inadvertent.

For these reasons, counsel for the Defendant respectfully requests this Court order the production of these materials.

FOR THE DEFENDANT,

_/s/ William M. McC_
WILLIAM M. McCAULEY
Beckerman, Bomberg & McCauley
35 Samoset Street
Plymouth, MA 02360
Tel.: (508) 746-8900
Fax: (508) 746-4455

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO.: 04CR10309GAO |
| | ) | VIOLATION: 18 U.S.C. § 922(G)(1) |
| V. | ) | Felon in Poss. F/A, Ammo |
| | ) | |
| KURBY DUMORNAY | ) | |

## AFFIDAVIT OF KURBY DUMORNAY

1. I am the defendant in the above referenced matter.

2. On March 10, 2004, the ATF executed a search warrant at 7 Colleen Drive, Brockton.

3. During the search, the officers told me that they were looking for a firearm and asked me where it was.

4. I told them where it was.

5. The ATF recovered the firearm.

6. The firearm was a Lorcin, 9MM with a serial number L094494.

7. I have reviewed the reports relating to this case.

8. The reports indicate that a Confidential Informant (CI) apparently provided information to the ATF that I displayed a firearm on two occasions outside of 7 Colleen Drive in Brockton. This is not true.

9. The Confidential Informant further told the ATF that on those two occasions, the CI was able to ascertain the make, model and serial number.

10. The serial number is not discernible unless it is observed up close.

11. The serial number is also in a position just above the trigger on the right side.

12. I am righthanded and if I displayed the firearm my finger would further impede the ability of any person to discern the serial number.

13.    There was only one person who was ever in a position to observe this information from the firearm.

14.    That was the person who induced me to buy the firearm.

15.    This was the only person who had sufficient opportunity to discern the make, model and serial number.

Signed under the pains and penalties of perjury.

_____
KURBY DUMORNAY

EXHIBIT # 1

**DEPARTMENT OF THE TREASURY**
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
## INFORMANT AGREEMENT

This confirms the agreement entered into between the Bureau of Alcohol, Tobacco and Firearms (ATF) and _____.

1. ATF has asked me to assist in an official investigation. In furtherance of this investigation, I agree to *(describe activity that the informant or cooperating witness or subject will be doing for ATF)*
   _____
   _____
   _____

2. ATF has assigned Special Agent _____ to serve as the controlling agent in this investigation. It is imperative that I maintain contact with Special Agent _____ and advise him/her of my activities and abide by his/her instructions.

3. I will not participate in any unlawful activities except insofar as ATF determines that such participation is necessary to this investigation and ATF expressly authorizes such acts in advance. I understand that any violation of the law not expressly authorized by ATF may result in my prosecution.

4. Under no circumstances will I participate, or be permitted to participate, in acts of violence. If I am asked to participate in any act of violence, or learn of such plans, I will attempt to discourage those plans or acts and will promptly notify ATF.

5. I will not initiate any plans to commit criminal acts. Further, I understand that I will not induce any individual to commit a crime that he or she has no predisposition to commit.

6. I will not attempt to be present during conversations between individuals under criminal indictment and their attorney. If I am inadvertently present and learn of defense plans or strategy, I am not permitted to report such conversations without prior approval from the United States Attorney's office.

7. While I will be working closely with ATF for purposes of this investigation, I understand that I am not a law enforcement officer, an employee, or agent of ATF and that I will not hold myself out to be such.

8. I understand that information that I provide to ATF may be used in a criminal proceeding. All legal means available will be used to maintain the confidentiality of my identity but I may be required to testify before a grand jury and at any subsequent hearing and trial. I understand that I have an obligation to provide truthful information and testimony, and that any deliberate false statement or testimony will subject me to criminal prosecution.

9. If, as a result of being a cooperating witness, it is determined by ATF that my life (or that of any member of my immediate family) may be in danger, ATF will, with my permission, apply to the Department of Justice to admit me to the Witness Security Program. I understand that the final decision is made solely by, and at the discretion of, the Department of Justice and not ATF.

10. I will in no way reveal the confidential and sensitive nature of this investigation. Further, I will not undertake any publication or dissemination of any information or material that results from this investigation without the prior express authorization of ATF.

11. ATF will reimburse me for expenses incurred that are deemed by ATF to be reasonable and in furtherance of this investigation.

12. I understand that any monetary or other type of reward given to me by ATF, either for services rendered or information provided, must be declared as other income on any income tax return I may be required to file.

13. I understand that any monetary or other type of reward given to me by ATF will not be contingent upon the prosecution, conviction, or punishment of individuals.

14. I understand that any monetary or other type of reward give to me by ATF will not be contingent upon my testimony in court of administrative hearings.

15. I understand that ATF cannot guarantee me any rewards, payments, other compensation, or the outcome of any judicial actions.

16. I will not engage in witness tampering, witness intimidation, entrapment, or the fabrication, alteration, or destruction of evidence.

17. I understand that if I am cooperating with ATF in exchange for consideration on my pending case, upon my request, ATF will advise the prosecuting office(s) of the nature and extent of my cooperation.

18. I understand that I may not enter into any contracts or incur any obligations on behalf of the U.S. Government, except as specifically instructed and approved by ATF.

19. No promises or representations have been given to me regarding my alien status and/or my right to enter or remain in the United States.

_____
Signature and Date

_____
Witness and Date

_____
ATF Special Agent

ATF F 3252.2 (2-97) (Formerly ATF F 3210.8) PREVIOUS EDITIONS ARE OBSOLETE

EXHIBIT #2



## CERTIFICATE OF SERVICE

I, William M. McCauley, as counsel for the defendant in the foregoing matter, hereby certify that I have this date served copies of the Defendant's Motion to Compel Further Discovery by mailing, first class mail, postage prepaid, a copy directed to

William Connolly
Assistant United States Attorney
U.S. Courthouse, Suite 9200
1 Courthouse Way, Boston 02210

Signed under the penalties of perjury this 14th day of November 2005.

William M. McCauley
Beckerman, Bomberg & McCauley
35 Samoset Street
Plymouth, MA 02360
(508) 746-8900