UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10309-GAO |
| | ) | |
| KURBY DUMORNAY | ) | |
| | ) | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
TO SUPPRESS EVIDENCE

The United States, by and through United States Attorney
Michael J. Sullivan and Assistant United States Attorney William
H. Connolly, hereby submits this memorandum in opposition to
Defendant Kurby Dumornay's Motion to Suppress evidence.

**FACTS**

**The Search Warrant**

On March 8, 2004, Magistrate Judge Dein issued a search
warrant authorizing the search of Dumornay's home at 7 Colleen
Street, Brockton, Massachusetts.  The warrant authorized federal
agents to search for firearms, ammunition, and other evidence of
Dumornay's possession of firearms.  Attached to the search
warrant and incorporated by reference therein, was an affidavit
prepared by Daniel Campbell ("Agent Campbell"), a special agent
with the Bureau of Alcohol, Tobacco, Firearms, and Explosives
("ATF").

Included in agent Campbell's affidavit was information
provided by a confidential reliable informant ("CI"), as well as

1

information learned by Agent Campbell through his own independent investigation. According to CI, he/she had observed Dumornay on two occasions within the past 40 days carrying a firearm. The specific passage read:

> The CI told me that he/she has observed DUMORNAY selling marijuana on a number of occasions. The CI stated that DUMORNAY also carries a firearm to protect himself and stated that he/she has seen DUMORNAY carrying a firearm on two occasions within the past 40 days. The CI further stated that on two separate occasions he/she saw DUMORNAY display the firearm to a number of individuals in the Brockton area while outside of his residence. According to the CI, on each of these occasions at some point after DUMORNAY displayed the gun he went back into his residence at 7 Colleen Street with the firearm.

(Aff. ¶ 5).

In an effort to confirm Dumornay's residence, Agent Campbell conducted his own independent investigation, which confirmed that Dumornay lived at 7 Colleen Street with his parents, Denise and Luc Dumornay. (Aff. ¶ 5-7).

In support of his belief that evidence of Dumornay's firearm possession would be located at 7 Colleen Street, Agent Campbell included a paragraph that detailed his experience with firearms and the way in which they are stored and maintained. The specific passage read:

> Based upon my training and experience as an ATF special agent, I know that individuals who own and possess firearms normally possess and maintain them for long periods of time.

Individuals who own and possess firearms generally keep them on t
residence, or in their vehicles because firearms are somewhat
expensive and do not easily wear out.  In my training and
experience I have learned that firearms are unlike narcotics or
currency, which are often used or exchanged soon after they are
obtained.  Firearms are similar to tools that a person buys and
maintains for a long period of time.  It has also been my
experience that individuals maintain firearms, along with
ammunition for the firearms, in a convenient and safe location in
order to afford ease of access and to provide security.

(Aff. ¶ 9).

**The Search Warrant Execution**

On March 10, 2004, at approximately 10:00 a.m., agents
executed the search warrant at 7 Colleen Street.  Defendant
Dumornay was present at the time of the search and agreed to show
agents the location of the firearm, which was concealed in a
drop-down ceiling in a first-floor room.  The firearm, a Lorcin
9mm, was loaded with twelve rounds of ammunition.  An additional
ten rounds of ammunition were found wrapped in a plastic bag
adjacent to the firearm.

<u>DISCUSSION</u>

The defendant argues that (1) the search warrant omitted
information relevant to the reliability of the CI; (2) the search
warrant affidavit failed to establish the requisite nexus between
the items sought and the property to be searched; and (3) the
information contained in the affidavit was stale, in that the
observations of Dumornay's gun possession were made approximately
forty to fifty days prior to the issuance of the warrant.  The
government has responded to the defendant's final two arguments

in reverse order.

## A.    CI's RELIABILITY

The defendant contends that Agent Campbell omitted information from his affidavit that, if provided to the magistrate, would have cast doubt on the reliability of the CI. (Mot. Supp. p. 4).  The defendant, however, has not filed a motion for a <u>Franks</u> hearing and absent such a motion, the Court may not consider the extraneous information.

Considering only the information contained in the four corners of the search warrant, the CI's reliability was established.  The search warrant affidavit contains the following passage:

> In the past, the CI has provided reliable information that I have incorporated into search warrant affidavits.  On one occasion, the CI provided me with information that a particular individual possessed two firearms. I included this information in my search warrant affidavit. In the resulting search, I seized both firearms and ammunition and arrested an individual who was later convicted for violations of firearms laws. On another unrelated occasion, the CI told me that a particular individual was selling firearms illegally.  Under my direction and control, the CI then purchased two firearms from this individual.  The investigation of this case is on-going.  The CI has a criminal record that includes convictions for narcotics offenses, among others, and he/she has a history of substance abuse.  The CI receives compensation for the information he/she provides to law enforcement and may have in the past or may in the future receive consideration on criminal cases.

4

(Aff. ¶ 2). This passage amounts to a sworn averment by Special Agent Campbell that in the past the CI had provided accurate information to law enforcement officials that resulted in the seizure of evidence and a conviction on one occasion and a controlled purchase of firearms on another occasion. See United States v. Cochrane, 896 F.2d 625, 641 (1st Cir. 1990) (representation by police officer affiant that prior information provided by informant had resulted in seizure of a controlled substance and an arrest was sufficient to establish the informant's reliability). See also 2 Wayne R. LaFave, Search and Seizure, § 3.3(b) at 121 (3d ed. 1996) (a previous track record of reliability on the informant's part "elevates him to the level of presumably reliable sources of information, such as other police and ordinary citizens who happen to be witnesses to or victims of crime"). Nothing more was required to establish the CI's reliability and the magistrate was entitled to, and did in fact, deem the CI reliable.

B. **NEXUS**

The defendant asserts that the search warrant affidavit failed to establish the requisite nexus between the items sought and the property to be searched. (Mot. Supp. p. 7-8). In his motion, the defendant appears to concede that the CI's two observations of Dumornay's firearm possession were at least sufficient to establish the requisite nexus at the time the

5

observations were made. (Mot. Supp. 8). The defendant contends, however, that the nexus dissipated over time. (Mot. Supp. p. 8). Notwithstanding the defendant's apparent concession on the nexus issue, the government asserts (and argues below) that the requisite nexus was established.

"A warrant application must demonstrate probable case to believe that (1) a crime has been committed- the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched- the so-called 'nexus' element." United States v. Feliz, 183 F.3d 82, 86 (1st Cir. 1999). Under this probable cause standard, "the 'totality of the circumstances' disclosed in the supporting affidavits must demonstrate 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Zayas-Diaz, 95 F.3d 105, 111 (1st Cir. 1996) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). This is a less stringent standard than a preponderance or a "more likely than not" standard. As the First Circuit has stated, "the words 'reasonable cause' are perhaps closer to what is meant." United States v. Melvin, 596 F.2d 492, 495 (1st Cir. 1979). See also Texas v. Brown, 460 U.S. 730, 742 (1983) (the probable cause standard does not demand a showing that the belief that evidence of a crime will be found be correct or more likely true than not).

6

Reviewing courts examining a magistrate's decision to issue a search warrant must consider the supporting affidavit "in a practical commonsense fashion[,]" United States v. Feliz, 183 F.3d at 86, and "the nexus between the objects to be seized and the premises to be searched do not have to rest on direct observation, but can be inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inferences as to where a criminal would hide [evidence of a crime]." United States v. Charest , 602 F.2d 1015, 1017 (1st Cir. 1979).

Read as a whole, in a common-sense fashion, the affidavit plainly established a "fair probability" that evidence of Dumornay's firearm possession would be located at 7 Colleen Street.  The affidavit established that 7 Colleen Street was Dumornay's residence (and Dumornay does not argue otherwise), and on two occasions, a reliable informant observed Dumornay display a firearm outside his residence, and then return to his residence.  The affidavit also includes observations drawn from Agent Campbell's general training and experience in firearm cases that individuals often store firearms in their home.  Alone, such generalized observations may not be enough to satisfy the nexus element, but when combined with specific observations of Dumornay twice displaying the firearm outside his home and then returning inside his home with the firearm, these general observations

7

contribute significantly to the probable-cause determination.
See United States v. Ribeiro, 397 F.3d 43 (1st Cir. 2005).
(detective's general observations about drug dealers combined
with specific observations contributed significantly to probable
cause determination).

Other circuits have found sufficient probable cause to
search a gun possessor's home on little more than the likelihood
that a gun possessor would store his gun in his home. For
example, in United States v. Anderson, 851 F.2d 727, 729 (4th
Cir. 1988), the Fourth Circuit upheld a district court's denial
of a motion to suppress where the nexus in the search warrant was
based merely on the inference that a likely place to find a gun
would be the possessor's residence. Id. In support of its
decision, the court pointed to similar holdings in the Fifth,
Eight, and Tenth circuits: United States v. Steeves, 525 F.2d
33, 38 (8th Cir. 1975) (pistol owners likely to keep them at
their home or on their person); United States v. Rhan, 511 F.2d
290, 293 (10th Cir. 1975), cert. denied, 423 U.S. 825, (1975)
(reasonable to assume that weapons possessors keep them in their
homes); and Bastida v. Henderson, 487 F.2d 860, 863 (5th Cir.
1973) (likely place to find assailants' pistols would be on their
person and in their residences). Thus, Dumornay's possession on
two occasions, without more, arguably would have been sufficient
to establish the requisite nexus. Surely then, the fact that

8

Dumornay twice displayed the firearm outside his house and then returned inside with it permitted the magistrate to conclude that Dumornay was likely storing the firearm at his home.

The First Circuit has not addressed this specific issue, but in Charest, 602 F.2d at 1017, the court overturned a district court's finding of probable cause to search a murder suspect's home for the murder weapon where there was no information contained in the search warrant affidavit suggesting that the weapon was probably in the suspect's home. Id. The court's holding, however, is not inconsistent with the holdings of the courts cited above because the court reasoned that "[i]t is contrary to common sense and logic to expect a murderer to keep the murder weapon in his own premises for almost three weeks." Id. at 1018.

Here, unlike the defendant in Charest, there was nothing to suggest that Dumornay would have a motivation to dispossess himself of the weapon.  There was no information suggesting that Dumornay had committed a crime that could be tied to his firearm through ballistics testing, and there was no information suggesting Dumornay was interested in selling or otherwise disposing of the firearm.  In fact, the information in the affidavit suggested that Dumornay would continue to possess the firearm, because he carried it for protection and had been seen displaying it on two occasions within the preceding forty days.

9

C.    STALENESS

The defendant asserts that the information in the affidavit was stale because the CI's observation of Dumornay's firearm possession was fifty days old at the time of the application for the search warrant.  The defendant's claim fails because the issuing magistrate was warranted in concluding that Dumornay's possession of a firearm was continuing and thus evidence of his firearm possession would be present in his home at the time the warrant was issued.

The First Circuit has noted that "no hard and fast rule can be formulated as to what constitutes excessive remoteness, because each case must be judged in its circumstantial context." United States v. Dauphinee, 538 F.2d 1, 5 (1st Cir. 1976).  It is not the number of days that have elapsed, but a number of factors that should be considered in evaluating the nature of the information provided, including the nature of the criminal activity, the nature of the items sought, and the characteristics of the place to be searched.  See United States v. Schaefer, 87 F.3d 562, 568 (1st Cir. 1996)(part of information relied upon for search warrant went back to activities of two to three years before involving the growing of marijuana).  "The longer the expected duration of the criminal activity and the longer the expected life of the items attendant to it, the more likely that a datum from the seemingly distant past will be relevant to a

current investigation." Id. at 568.

Here, several factors supported the magistrate's conclusion that the information was not stale. First, as noted previously, both the nature of the criminal activity and the information provided by the CI suggested that Dumornay's possession of the firearm was continuing. See Rahn, 511 F.2d at 293 (probable cause to believe stolen firearms still at defendant's residence two-years after theft; defendant had planned to keep one firearm for his personal use and had commented that firearms would appreciate in value). Second, a firearm is a durable item with enduring utility, and is likely to be kept for a long period of time. See Steeves, 525 F. 2d at 33 (given nature of items sought, search of bank robber's residence for revolver and clothes lawful despite 87-day delay). Finally, the place to be searched was a permanent locus. See United States v. Bucuvalas, 970 F.2d 937, 941 (1st Cir. 1992) (information more likely to be timely when items stored at permanent location).

The defendant attempts to enhance his staleness argument by reducing from two to one the number of times Dumornay was seen in possession of a firearm. The defendant contends that, because the affidavit is silent as to when the CI's observations occurred, both observations could have been on the same day an hour apart. (Def. Mem. p. 6). This contention, however, must be rejected because the magistrate was not required to engage in a

piece-mail dissection of the affidavit.  Such a hyper-technical analysis is precisely the type of analysis discouraged by the First Circuit.  United States v. Ferreras, 192 F.3d 5, 10 (1st Cir. 1999) (search warrants and affidavits should be considered in a common sense manner, and hyper-technical readings should be avoided).  Even assuming, arguendo, that the two observations occurred one day apart, fifty days prior to the application for search warrant, the defendant's argument still fails because "firearms are somewhat expensive and do not easily wear out" and "are similar to tools that a person buys and maintains for a long period of time." (Aff. ¶ 9).  The combination of the type of criminal activity suspected, the nature of the item sought, and the locus of the search, defeat any claim of remoteness.

   D.   GOOD-FAITH EXCEPTION

      Even assuming, arguendo, that the affidavit somehow failed to establish probable cause to search the residence at 7 Colleen Street, this Court nevertheless should uphold the search pursuant to the "good faith" exception of United States v. Leon, 468 U.S. 897 (1984).  Since no deterrent purpose is served by sanctioning "objectively reasonable" law enforcement conduct, the "extreme sanction" of exclusion is inapplicable to evidence seized pursuant to a search warrant obtained in an "objectively reasonable" manner from a neutral magistrate, even assuming the warrant or supporting affidavits were defective.  Leon, 468 U.S.

12

at 922, 926; Zayas-Diaz, 95 F.3d at 113; United States v. Ricciardelli, 998 F.2d 8, 15 (1st Cir. 1993). As long as the officers acted in good faith, the reasons behind the exclusionary rule do not come into play and suppression is not required.

It is the magistrate's obligation to determine probable cause. An officer or agent is not "expected to question the magistrate's probable cause determination." Leon, 468 U.S. at 921. In his motion, Defendant makes no claim that the affiant was not acting in good faith.[1] "There is a presumption created in Leon that when an officer relies upon a warrant, the officer is acting in good faith." United States v. McNeely, 6 F.3d 1447 (10th Cir. 1993). In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." United States v. Robinson, 359 F.3d 66, 70 (1st Cir. 2004). None of these circumstances is present here.

---

[1]"Exclusion remains the appropriate remedy in several circumstances, including (1) where the magistrate is misled by information in an affidavit that the affiant knew was false or would have known was false except for a reckless disregard for the truth, or (2) where the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. See United States v. Brunette, 256 F.3d 14, 19 (1st Cir.2001) (citing Leon, 468 U.S. at 923, 104 S.Ct. 3405)." United States v. Capozzi, 347 F.3d 327, 332 (1st Cir. 2003). Those circumstances do not apply here as defendant has not specifically raised these claims.

Accordingly, suppression is not warranted

**CONCLUSION**

For the foregoing reasons, the Court should deny Defendant's Motion to Suppress.

Respectfully submitted,

Michael J. Sullivan
United States Attorney


By:/s/ William H. Connolly
William H. Connolly
Assistant U.S. Attorney

July 11, 2006