UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 04-10309-GAO

UNITED STATES OF AMERICA

v.

KURBY DUMORNAY,
Defendant

MEMORANDUM AND ORDER
October 26, 2006

O'TOOLE, D.J.

**I.    Introduction**

Kurby Dumornay stands indicted for the offense of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He was arrested after agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") executed a search warrant at the residence he shared with his parents at 7 Colleen Street in Brockton and, apparently with Dumornay's assistance, found a loaded Lorcin 9mm handgun and ten rounds of ammunition concealed in the drop-down ceiling of a first floor room. The warrant issued upon the application of ATF Special Agent Daniel Campbell. The affidavit submitted by Campbell in support of the application was based in large part on information he obtained from a paid confidential informant ("CI").

According to Campbell's affidavit, the CI told him that he or she had observed Dumornay on two occasions "display [a] firearm to a number of individuals in the Brockton area while outside of his residence." Campbell said that the CI further informed him that on each occasion, Dumornay went back into his residence with the firearm. Campbell indicated that he had conducted his own investigation to confirm that Dumornay lived at 7 Colleen Street with his parents and that, based on

his training and experience as an ATF agent, he knew that "individuals who own and possess firearms normally possess and maintain them for long periods of time" and are likely to keep them on their person, in their residence or in their vehicles.

Dumornay has moved to suppress all physical evidence seized as a result of the execution of the warrant, as well as any statements made by him at the time of the search. He argues that the information provided by the CI that formed the basis of the search warrant affidavit was not sufficiently reliable; that the information in the affidavit was stale; and that there was not a sufficient nexus between the alleged criminal activity and the place to be searched.

## II. Discussion

### A. The Probable Cause Standard

The Fourth Amendment of the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. In order for a warrant to issue, "[a] warrant application must demonstrate probable cause to believe that (1) a crime has been committed – the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched – the so-called 'nexus' element." United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999). It is the duty of the magistrate who issues a search warrant "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983); see also United States v. Zayas-Diaz, 95 F.3d 105, 111 (1st Cir. 1996). This "probable cause" standard is less stringent than either a preponderance of the evidence or "more likely than not" standard. See United States v. Grant, 218 F.3d 72, 75 (1st Cir. 2000).

In considering a motion to suppress, a court asks whether the totality of the circumstances set forth in the affidavit demonstrates probable cause to search the target premises, with deference being given to the reasonable inferences the issuing magistrate may have drawn from the attested facts. See United States v. Greenberg, 410 F.3d 63, 66-67 (1st Cir. 2005) (quoting United States v. Barnard, 299 F.3d 90, 92-93 (1st Cir. 2002)). "In a doubtful or marginal case, the court defers to the issuing magistrate's determination of probable cause." Id. at 67.

### B.    Reliability of the Confidential Informant

Dumornay's first argument attacks the CI's reliability. He argues that Campbell "cast a blind eye" to information that might have called into question the reliability of the information provided by the CI. Def.'s Mot. to Suppress 3, dkt. no. 31. This "other information" that the CI provided Campbell with, namely the make, model and serial number of the weapon Dumornay was allegedly observed to "display," is found in government reports regarding the interactions between Campbell and the CI. Dumornay contends that "[i]t is not credible to believe" that the CI could know these specific details about the gun while it was in Dumornay's possession because the make, model, and serial number are not easy to discern through casual observation. Id. at 4. He suggests that this information was intentionally omitted from the affidavit because it would have raised questions in the magistrate's mind as to the credibility or reliability of the information provided by the CI.[1]

---

[1] The defendant takes the position that the CI could only have known the information if he or she was the person who actually provided the gun to Dumornay in the first place. Even if this suspicion were true, it does not necessarily support the defendant's motion to suppress. While it might cast some doubt on the credibility of the CI generally, because he or she may not have been entirely honest with the agent about how the information was obtained, it might also (if true) have the tendency to make the information relayed in Campbell's affidavit – that Dumornay was seen in possession of a gun – even *more* credible, coming as it would, in the defendant's view, from the person who had handed him the gun.

3

Dumornay hints at, but does not make, an argument that Campbell's omission to relate in the affidavit that the CI had provided him with the make, model, and serial number of the firearm was intentionally misleading. The hint is half-hearted and Dumornay has not challenged the truthfulness of the affidavit by moving for a Franks hearing.[2] Absent such a motion, "[a]n affidavit submitted in support of a search warrant application is presumed valid." Grant, 218 F.3d at 75.

Considering the affidavit on its face, then, the magistrate's conclusion that the CI was reliable should not be disturbed. It is a familiar proposition that where, as here, the magistrate's probable cause finding is based largely upon information provided by a confidential informant, the affidavit must provide some information from which the magistrate can assess the informant's credibility. Barnard, 299 F.3d at 93. The kinds of information that may be used include:

> whether an affidavit supports the probable veracity or basis of knowledge of persons supplying hearsay information; whether the informant statements are self-authenticating; whether some or all of the informant's factual statements were corroborated wherever reasonable and practicable . . .; and whether a law enforcement affiant included a professional assessment of the probable significance of the facts related by the informant, based on experience or expertise.

---

[2] Under Franks v. Delaware, 438 U.S. 154 (1978), a defendant may be entitled to an evidentiary hearing to explore the affiant's truthfulness if he can make "a substantial preliminary showing that (1) a false statement, (2) knowingly and intentionally, or with reckless disregard for the truth, was included in the warrant affidavit, and (3) the allegedly false statement is necessary to the finding of probable cause." United States v. Ranney, 298 F.3d 74, 78 (1st Cir. 2002) (internal quotation marks omitted). For Franks purposes, a "false statement" may also include a material omission of information. Cf. United States v. Castillo, 287 F.3d 21, 25 (1st Cir. 2002) ("A material omission of information may also trigger a *Franks* hearing.").

Dumornay has neither moved for a Franks hearing nor made a "substantial" preliminary showing that the omitted information was material to the probable cause determination, see supra note 1. Nor has he offered any basis for concluding that the omission was made "knowingly and intentionally, or with reckless disregard for the truth," as that requirement has been interpreted and applied in the First Circuit. See Ranney, 298 F.3d at 78 ("To prove reckless disregard for the truth, the defendant must prove that the affiant 'in fact entertained serious doubts as to the truth' of the allegations.").

Zayas-Diaz, 95 F.3d at 111 (internal quotation, footnote, and citation omitted). Other indicia of credibility may also be relevant. See id.

Here, there are several factors that would have permitted the magistrate to conclude that the CI was reliable. Campbell vouched for the CI's reliability by detailing two other occasions where he or she had provided information relating to individuals who either possessed or sold firearms. In one case the information led to a conviction, in the other the investigation is ongoing and the CI has been used successfully to make two controlled buys of firearms from the alleged dealer. Such evidence of prior reliability is often all that is necessary to establish the CI's credibility. See Greenburg, 410 F.3d at 67 (citing United States v. Jordan, 999 F.2d 11, 14 (1st Cir. 1993)); United States v. Cochrane, 896 F.2d 625, 641 (1st Cir. 1990). Campbell also knew the CI's identity, and therefore could hold the CI responsible if he or she provided false information, a fact which courts have concluded creates an "incentive" for CIs to tell the truth. See Greenburg, 410 F.3d at 67; Barnard, 299 F.3d at 93 (citing Florida v. J.L., 529 U.S. 266, 270 (2000)). Finally, Campbell undertook an independent effort to corroborate at least one of the details provided by the CI–the location of Dumornay's residence. See Greenburg, 410 F.3d at 69 (citing United States v. Dawkins, 17 F.3d 399, 404 (D.C. Cir. 1994) ("In some circumstances, it may be enough that law enforcement officers confirm the tips' innocent detail.")). Giving the magistrate's determination due deference, it must be concluded that the affidavit, on its face, sufficiently established the CI's reliability.[3]

---

[3] The affidavit also disclosed that the CI has a criminal record for narcotics offenses, "among others," a history of substance abuse, receives compensation for the information that he or she provides to law enforcement, and may have in the past or may in the future receive consideration in criminal proceedings. While such information affects an assessment of credibility, the weight of the other factors could justifiably have led the magistrate judge to conclude that, on balance, the information provided by the CI with respect to Dumornay was sufficiently reliable for the warrant to issue.

### C.     Nexus and Staleness

Dumornay asserts that the affidavit failed to establish a sufficient nexus between his alleged possession of a firearm and the premises at 7 Colleen Street to justify a warrant to search that residence. His contention in this respect is augmented by his additional argument that the information supplied by the CI was too "stale" by the time the warrant was actually applied for, weakening any inference that the firearm seen in Dumornay's possession might be found within the home.

Campbell's affidavit indicates that: (1) Dumornay was observed by the CI on two occasions entering the residence at 7 Colleen Street carrying a firearm; (2) Campbell independently confirmed that Dumornay lived at that residence with his parents; and (3) based on his training and experience as an ATF special agent, Campbell knew that individuals who own or possess firearms are likely to keep them on their person or in locations such as their residence or their vehicle. This combination of specific observation and general knowledge is typically sufficient to establish the requisite nexus between the specified evidence and the location sought to be searched; in fact, courts have found that probable cause existed to search a suspect's residence for a firearm based on little more than an inference that the most likely place to find a firearm is on the suspect's person or in his residence.[4]

---

[4] The First Circuit has not apparently directly addressed this question but several other circuits have reached conclusions that would support a finding of probable cause based on such information. See United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988) (affirming denial of motion to suppress and holding that "[i]t was reasonable for the magistrate to believe that the defendant's gun and the silencer would be found in his residence. Therefore, even though the affidavit contained no facts that the weapons were located in defendant's trailer, we reject his argument that the warrant was defective"); see also United States v. Steeves, 525 F.2d 33, 38 (8th Cir. 1975) ("[P]eople who own pistols generally keep them at home or on their persons."); cf. United States v. Feliz, 182 F.3d 82, 88 (1st Cir. 1999) ("The nexus between the objects to be seized and the premises searched need not, and often will not, rest on direct observation, but rather 'can be inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inferences as to where a criminal would hide [evidence of a crime] . . . .' We do not find it unreasonable for the issuing judge in this case to have relied

However, even if the information contained in the affidavit would have been sufficient to establish a nexus between the firearm and the Dumornay residence *around the time of the CI's observations*, it remains to be asked whether that nexus became too attenuated by the passage of time. Dumornay argues that it was too attenuated, fifty days having elapsed between the CI's last observation of Dumornay entering his residence with the firearm and the date that Campbell applied for the warrant.

An "affidavit supporting a search warrant must contain timely information or else it will fail." United States v. Schaefer, 87 F.3d 562, 568 (1st Cir. 1996). Further, "no hard and fast rule can be formulated as to what constitutes excessive remoteness, because each case must be judged in its circumstantial context." United States v. Dauphinee, 538 F.2d 1, 5 (1st Cir. 1976); see also United States v. Wilder, No. 04-10217-GAO, 2005 WL 1106922, at *5 (D. Mass. May 6, 2005) ("Whether information offered in support of a warrant application is too 'stale' to support an inference that fruits of the offense will be found depends overwhelmingly on the particular factual circumstances."). Factors bearing on the potential staleness of information in an affidavit include the nature and characteristics of the crime, the criminal, the evidence to be seized, and the place to be searched. See

---

upon her common sense, buttressed by affiant's opinion as a law enforcement officer, that Feliz would be likely to keep proceeds from his drug trafficking and records relating to drug transactions at his apartment.") (alteration in original) (internal footnote and citations omitted); United States v. Ingram, No. 02-10360-RWZ, 2003 WL 21058181, at *2 (D. Mass. May 9, 2003) ("It is certainly true that the affidavit did not recite any direct evidence to suggest the presence of the items in the apartment. But that is not the standard. The satisfaction of the nexus element requires 'a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place'. . . . [I]t is reasonable to infer that one's home would be used to keep and hide a gun and other paraphernalia employed in a crime that occurred elsewhere.") (citations omitted).

Schaefer, 87 F.3d at 568; United States v. Moscatiello, 771 F.2d 589, 597 (1st Cir. 1985), vacated on other grounds, 476 U.S. 1138 (1986). "The longer the expected duration of the criminal activity and the longer the expected life of the items attendant to it, the more likely that a datum from the seemingly distant past will be relevant to a current investigation." Schaefer, 87 F.3d at 568.

The question is whether the affidavit, read as a whole, demonstrates a "fair probability" that a firearm would be found at 7 Colleen Drive, even though fifty days had elapsed between the agent's receipt of the latest relevant information and the submission of the application for the warrant. See Zayas-Diaz, 95 F.3d at 111. In the affidavit, Campbell asserted that, based on his training and experience as an ATF special agent, individuals who own or possess firearms "normally possess and maintain them for long periods of time" and that they are likely to keep them on their person or in their residence or vehicle because firearms are "somewhat expensive and do not easily wear out." In this sense, Campbell distinguished firearms from other, more ephemeral, contraband such as narcotics or currency, which are "often used or exchanged soon after they are obtained." Campbell Aff. ¶ 9.

That well may be, but there are also substantial reasons for doubting that a highly portable thing like a gun might be in the same place where it was last observed fifty days earlier. See Wilder, 2005 WL 1106922, at *5 ("If the evidence or contraband described is either easily movable, like a firearm, or consumable, like drugs, the information about its presence in a particular location has a very short shelf life."). Even Campbell's affidavit itself acknowledged the possibility that the gun might not be found in the residence; he stated that it is also common for a suspect to carry a weapon on his person or in his vehicle. In this case, the gun had not been seen by the CI inside the house, but rather in Dumornay's hands; he apparently carried it about on his person.

8

I conclude that the passage of more than a month and a half since the CI saw Dumornay enter the house carrying the firearm made that information too remote in time for it to be relied upon to predict that the search of the premises would discover the weapon. Certainly there was reason to speculate that Dumornay might have stashed the gun there, but the issuance of a warrant must rest on something more than plausible speculation. Probable cause for the search was not satisfactorily demonstrated and the warrant should not have issued.

### D.     Good Faith Exception

That is not the end of the matter, however. Though the warrant was not properly issued and the search was not therefore "reasonable" under the Fourth Amendment, the evidence nonetheless need not be suppressed because the circumstances of this case fall within the saving scope of the "good faith exception" to the exclusionary rule established by United States v. Leon, 468 U.S. 897 (1984). See United States v. Riccardelli, 998 F.2d 8, 15 (1st Cir. 1993) ("If . . . the warrant's defectiveness results from . . . borderline calls about the existence of probable cause, see Leon, 468 U.S. at 926 (favoring non-exclusion in situations where the warrant is based on 'evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause'), then the evidence may be used, despite the warrant's defectiveness."). In Leon, the Supreme Court held that suppression of evidence seized in reliance on a warrant later found to be defective is only required where (1) the issuing magistrate judge was misled by information in the affidavit that the affiant knew was false or would have known was false except for reckless disregard of the truth; (2) the issuing magistrate wholly abandoned her detached and neutral judicial role; (3) the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) a warrant is so facially deficient that the executing officers cannot reasonably

9

presume it to be valid. 468 U.S. at 923; see also id. at 922 ("[T]he marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.").

In this case, there is no evidence that the magistrate judge abandoned her detached and neutral role, nor is there any basis for concluding that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. at 923. Furthermore, the warrant which ultimately issued was not so facially deficient as to raise questions about its validity in the minds of executing officers. This leaves only the question of whether the affiant, acting in bad faith, misled the magistrate judge by including or omitting particular information from the affidavit. Here, as previously discussed, Dumornay has suggested that Campbell intentionally omitted information about the make, model, and serial number of the gun from the affidavit, purportedly to avoid raising questions about the CI's reliability, but he has offered no evidence to support his claim beyond a conclusory assertion that "it is not credible to believe" that the CI obtained the specific information about the gun simply from seeing Dumornay "display" it. Without more, and there is no more offered, the presumption of the validity of the affidavit endures. See Franks, 438 U.S. at 171; United States v. Tzannos, 460 F.3d 128, 136 (1st Cir. 2006) (citing Franks). The defendant's unsubstantiated opinion regarding the credibility of the CI's story is not enough to rebut that presumption of validity, and it does not constitute a sufficient ground for concluding that Campbell acted recklessly or in bad faith when he failed to include in his affidavit the fact that the CI had told him the make, model, and serial number of the gun.

**III.   Conclusion**

For the foregoing reasons, though the warrant was improperly issued and the resulting search

therefore was unreasonable under the Fourth Amendment, the evidence need not be excluded from Dumornay's trial. The motion to suppress (Dkt. No. 31) is DENIED.

It is SO ORDERED.


  October 26, 2006                                              /s/ George A. O'Toole            
DATE                                                         DISTRICT JUDGE