UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES | ) ) ) ) ) ) ) ) ) | Cr. No. 04-10309-GAO |
| v. |
| KURBY DUMORNAY |

## KURBY DUMORNAY'S SENTENCING MEMORANDUM

**I. Introduction**

Mr. Dumornay respectfully submits this memorandum in order to provide information to assist the Court in fashioning a sentence "sufficient, but not greater than necessary" to achieve the statutory purposes of punishment, as required by 18 U.S.C. § 3553(a) in light of United States v. Booker, 125 S. Ct. 738 (2005); United States v. Jimenez-Beltre, 440 F.3d 514, 2006 WL 562154 18-19(1st Cir. Mar. 9, 2006)(en banc)(Torruela, concurring)("Finally, I think it is of critical importance that the majority opinion be understood to reinforce our commitment to the statutory requirement that, in all cases, district courts must impose sentences that are "sufficient, but not greater than necessary" to effectuate the goals of criminal punishment, as articulated in 18 U.S.C. §3553(a).  In articulating its reasons for imposing any sentence, the district court must make clear reference to this central principle.")

Booker restored the district courts' historic function and ability to fashion a sentence tailored to the individual circumstances of the case and defendant before it by requiring courts to consider factors other than the sentencing range prescribed by the United States Sentencing Guidelines. United States v. Pho, 443 F.3d 53, 61-62 (1st Cir. 2006) (18 U.S.C. §3353(a) factors to be considered include "the nature and circumstances of the offense and the history and characteristics of the defendant," "the need for the sentence imposed," and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct,".) In fact, under Section 3553(a), courts are required to sentence below the guideline range if such a sentence would be sufficient to achieve the statutorily proscribed purposes of punishment.

Mr. Dumornay has been incarcerated for the last 11 months at the Plymouth County House of Correction. He moves the Court impose a sentence of 16 months incarceration, with a two year period of supervised release, a one hundred dollar special assessment and no fine. Such a sentence is justified by the facts of this case, and is "sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in 18 U.S.C. § 3553(a) (2), United States v. Booker, 125 S.Ct. 738 ( 2005). Under the circumstances of this case, which include Mr. Dumornay's personal history and characteristics, and the nature and circumstances of the offense, the proposed sentence is just, reasonable, sufficient and not greater than necessary.

**II. Argument**

Following the Supreme Court's decision in United States v. Booker, 125 S.Ct. 738 (2005) a court must look to 18 U.S.C. § 3553(a), and impose a sentence that is

"sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in § 3553(a)(2). <u>Booker</u> 125 S.Ct. at 764-65. In imposing sentence, the Court must consider all of the factors set forth in § 3553(a)(1)-(7), <u>United States v. Smith</u>, 445 F.3d 1, 5-6 (1st Cir. 2006)

       1. <u>Mr. Dumornay's personal history and characteristics, and the nature and circumstances of the offense. (§ 3553(a)(1))</u>

a) <u>Mr. Dumornay's personal history and characteristics</u>

Kurby Dumornay is twenty-four years old, born in Boston and raised in Brockton, Massachusetts (Presentence Report at Paragraphs 46-47; hereinafter citations to the Presentence Report will be referred to as "PSR at ¶__") . He appears to have had somewhat difficult teenage years, evidenced by an estrangement with his mother (PSR at ¶48), his regular use of marihuana (PSR at ¶64) and two arrests at the age of 18 (PSR at ¶¶31-32). The second arrest resulted in incarceration and his forced departure from the eleventh grade. (PSR at ¶67)

Despite this setback, Mr. Dumornay persevered with his education and obtained his GED, and subsequently attended Massasoit Community College for one year. (PSR at ¶68(. He also has a substantial employment history; he began working with Reebok at 16, and has had jobs with Herb Chambers and Old Navy. (PSR at ¶¶75-76). He worked for his father on and off for several years, and most recently worked for Victory Real Estate in Randolph as a loan officer (PSR at ¶71). Letters from people he worked with are attached hereto, and speak to his professional qualities and to his potential in the work force in the future.

Mr. Dumornay also enjoys strong family support. His sister has written a letter to the Court, filed herewith, on behalf of the family, and she writes of the importance Kirby

3

is to the family and the love they have for him. His earlier difficulties with his mother are past, and she awaits his return home "so he can move forward with his life".( PSR at ¶56).

    b) <u>The nature and circumstance of the offense</u>

In March of 2004, law enforcement acting on an informant's tip that Mr. Dumornay was seen in possession of a handgun, secured a search warrant for the home in which Mr. Dumornay lived with his parents. When law enforcement arrived at the home to execute the search warrant, they met with Mr. Dumornay, who was 20 years old at the time. After the officers explained to him why they were there, he cooperated and showed them where the gun was hidden in a drop ceiling panel, and later he told them how it came to be in his possession (PSR at ¶¶ 10-11). According to discovery produced by the government, the gun was loaded, but inoperable, missing, among other parts, a firing pin.

    2. <u>The need for the sentence  a)"to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense", b) "to afford adequate deterrence to criminal conduct", c) "to protect the public from further crimes of the defendant", and d) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner" (§ 3553(a)(2)(A-D))</u>

The illegal possession of a firearm is a serious offense, as are practically all violations of federal criminal statutes. That said, it should be recognized that the firearm at issue here was inoperable, and was secured in the ceiling of his parent's house. The guideline range was increased by two levels based on the firearm having been stolen (PSR at ¶21), though there is no evidence that Mr. Dumornay participated in its theft as

the firearm was stolen from a pawn shop in Alabama (PSR at ¶12) or that he knew that it was stolen.

The proposed sentence adequately reflects the seriousness of the present offense, promotes respect for the law, and provides substantial deterrence, both to Mr. Dumornay, should he ever contemplate re-offending and to others in the community who commit like crimes. While Mr. Dumornay has been in trouble previously, engaging in property crimes, there is no history of violence which would necessitate his continued incarceration in order to protect the public.

Mr. Dumornay has no specific need for the various educational, vocational or rehabilitative services the Bureau of Prisons offers. Mr. Dumornay has come to the point in his life where he is no longer a kid and needs to decide what kind of future he wants for himself. As noted above, he has demonstrated the ability to accomplish goals, like obtaining his G.E.D. He has shown the ability to not simply maintain employment but to be successful and respected by his colleagues and employers. But he has also demonstrated a certain immaturity in the past, and made bad decisions which if repeated will ultimately lead to continued incarcerations.

The term of supervised release which this Court will impose can provide exactly the "carrot and stick" necessary to encourage and monitor Mr. Dumornay's positive pursuits, and to be a constant reminder that re-incarceration is an immediately available sanction should any criminal behavior be repeated. The proposed term of incarceration followed by a term of supervised release will provide Mr. Dumornay with the assistance and incentive to successfully make something of himself, and to put the mistakes of his youth behind him.

    3.  <u>The "kinds of sentences available", the "kinds of sentence and sentencing range" established under the Guidelines and "any pertinent policy statement" (§ 3553(a)(3)-(5))</u>.

Mr. Dumornay's advisory guideline range is 18 to 24 months.  The proposed sentence of 16 months is a minor variance from the range, and reflective of the fact that the firearm was inoperable (taking the facts of this case somewhat modestly outside the "heartland", as the Sentencing Commission was in all likelihood contemplating functioning firearms when establishing the guideline ranges), and that the guideline range was increased from 15 to 21 months to 18 to 24 months as the weapon, unbeknownst to Mr. Dumornay, was stolen.

## II. Conclusion

As set forth above, the Guidelines are advisory, and were created to fulfill the goals of §3553.  The time Mr. Dumornay has spent in Plymouth has been trying and sobering, and have constituted real and significant punishment for his crime, and several additional months, as the proposed sentence of 16 months would entail, will emphasize to him the need for him to put his priorities in order.  But neither Mr. Dumornay nor the public is served by warehousing him for much longer.  He is an intelligent, articulate and personable young man, and he should be making something of himself and his future, as he is capable of doing, and that process should begin now.

                              Respectfully Submitted,
                              Kurby Dumornay
                              By his attorney

                              <u>/s/ Michael C. Andrews</u>
                              Michael C. Andrews
                              21 Custom House Street
                              Boston, Massachusetts 02110
                              (617) 951-0072
                              BBO# 546470